# EXHIBIT
# 4

# First Hill

# Collection Case



# DISTRICT COURT OF MARYLAND FOR ANNE ARUNDEL COUNTY

City/County

Located at   George M. Taylor Multi-Service Center 7500 Gov. Ritchie    Case No.   070200093162011
             Highway Glen Burnie MD 21061
             Court Address

## STATE OF MARYLAND
## OR

Midland Funding LLC                                     SUZANNE  HILL

_____                                _____
Plaintiff                                              Defendant

---

## ADDRESS CHANGE REQUEST

Name: Midland Funding LLC

☐ Criminal  ☐ Traffic  ☒ Civil

Please update the record in this case to reflect the correct mailing address.

Filed on behalf of

☐ Defendant  ☐ Witness ☐ Complainant ☒ Plaintiff ☐ Petitioner ☐ Respondent ☐ Other, Specify _____

The correct address is          8875 Aero Drive
                                _____
                                Address

                                Suite 200
                                _____
                                Suite/Apartment #

                                San Diego,   CA   92123
                                _____
                                City,       State    Zip

                                _____
                                Signature                          Date
                                _____  Nathan Willner, Esquire
                                _____  Laurie H. Lyons, Esquire
                                _____  Michele R. Gagnon, Esquire
                                        Printed Name

                                        (888) 299-0499
                                _____
                                        Telephone

DC/CV 65 (Rev.12/2009)
MD_126

File No. 11-21934

Financial Regulation Public Query



## STATE OF MARYLAND
# DLLR
### DEPARTMENT OF LABOR, LICENSING AND REGULATION

## Financial Regulation Public Query

### Step 4: Display Detailed Record Information

**Business Information**

**Legal Name:** MIDLAND FUNDING LLC

**Trade Name:**

**Business Type:** Limited Liability Company (LLC)

**Street Address:** 8875 AERO DR., STE. 200
SAN DIEGO, CA 92123-0000

**License Information**

**Category:** Collection Agency

**License Number:** 5479

**Expiration Date:** 01 - 15 - 2014

**Original Issue Date:** 01 - 15 - 2010

**Status:** ACTIVE

Select one of the following links to perform another search:

Search by Location

Search by Company Name

Search by individual(s) Name

[ Home ] [ What's New! ] [ General Info ] [ DLLR Divisions ] [ Forms & Applications ] [ Search The Site ]



STATE OF MARYLAND

# DLLR

DEPARTMENT OF LABOR, LICENSING AND REGULATION

## Financial Regulation Public Query

### Step 4: Display Detailed Record Information

**Business Information**

**Legal Name:** MIDLAND CREDIT MANAGEMENT, INC.

**Trade Name:**

| | |
|---|---|
| **Business Type:** | Corporation |
| **Street Address:** | 16 MCLELAND ROAD<br>ST. CLOUD, MN 56303-0000 |

**License Information**

| | |
|---|---|
| **Category:** | Collection Agency |
| **License Number:** | 4222 |
| **Expiration Date:** | 09 - 27 - 2013 |
| **Original Issue Date:** | 09 - 28 - 2005 |
| **Status:** | ACTIVE |

Select one of the following links to perform another search:

Search by Location

Search by Company Name

Search by individual(s) Name

[ Home ] [ What's New! ] [ General Info ] [ DLLR Divisions ] [ Forms & Applications ] [ Search The Site ]

3

Affidavit of Records (MD)

STATE OF MARYLAND

Midland Funding LLC, successor in interest to
CHASE BANK USA, N.A.

Plaintiff

vs                                                         AFFIDAVIT OF ASHLEY HOFFMAN

SUZANNE   HILL

Defendant(s).

---

ASHLEY HOFFMAN, whose business address is 16 McLeland Road Suite 101, St. Cloud, MN 56303, certifies and says:

1.      I am employed as a Legal Specialist and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of plaintiff Midland Funding LLC. Plaintiff purchases portfolios of delinquent accounts from either the original creditor or a subsequent purchaser of the account, and thereafter assigns the accounts to MCM to be serviced. Plaintiff does not operate and / or maintain a computer system. MCM holds the computer records and account information for accounts purchased by plaintiff.

2.      I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on plaintiff's behalf. Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's CHASE BANK USA, N.A. account XXXXXXXXXXXX 1413 (MCM Number 8539196440) (hereinafter "the account"). I have access to and have reviewed the records pertaining to the account and am authorized to make this Affidavit on plaintiff's behalf.

4

Affidavit of Records (MD)

3.      I am familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account. The records are kept in the regular course of business. It was in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record. In the regular course of business, the record or compilation is made at or near the time of the act or event.

I certify under penalty of perjury that the foregoing statements are true.

Date:    JUL 0 3 2012

_____
Ashley Hoffman

STATE OF MINNESOTA

COUNTY OF STEARNS

Signed and sworn to (or affirmed) before me on ____ JUL 0 3 2012 ____ by   **Ashley Hoffman**

(SEAL)   

KATIE J. VANDE BRAKE
NOTARY PUBLIC-MINNESOTA
My Comm. Exp. Jan. 31, 2017

_____
Notary Public

My Commission expires: _____

MD_02B                          LDV File No.   11-21934

5



## DISTRICT COURT OF MARYLAND FOR ANNE ARUNDEL COUNTY

| LOCATED AT (COURT ADDRESS) | COMPLAINT ☒ $5,000 and under ☐ over $5,000 ☐ over $10,000 |
|---|---|
| George M. Taylor Multi-Service Center 7500 Gov. Ritchie Highway Glen Burnie MD 21061 | Clerk: Please docket this case in an action of ☒contract ☐tort ☐replevin ☐detinue ☐ bad faith insurance claim. |

The particulars of this case are:

**CASE NO.** 9316-11

### PARTIES

Plaintiff:

Midland Funding LLC
16 McLeland Road
St. Cloud MN 56303

vs.

| Defendant(s): | Serve by: |
|---|---|
| 1.  SUZANNE HILL 310 BERTS DR LOTHIAN MD 20711 | ☐ Certified Mail ☒ Private Process ☐ Constable ☐ Sheriff |
| 2. | ☐ Certified Mail ☒ Private Process ☐ Constable ☐ Sheriff |
| 3. | Serve by: ☐ Certified Mail ☐ Private Process ☐ Constable ☐ Sheriff |
| 4. | Serve by: ☐ Certified Mail ☐ Private Process ☐ Constable ☐ Sheriff |

That the Plaintiff as stated above by Nathan Willner~; Laurie H. Lyons; Michele R. Gagnon, its attorney, sues the Defendant for money payable by the Defendant to the Plaintiff as follows:  That the Defendant purchased miscellaneous merchandise, services and/or received a cash advance on their account with Midland Funding LLC.  That is the subsequent assignee of , the original creditor.  There is a balance overdue as per affidavit and statements attached here.  Also, the terms and conditions provide for reasonable Attorney's fees.

07/0200073162011
Trial Date & Time
SMALL CONTRACT 28.00
07/07/11 15:58 50/82/ 07021I

*ENTERED   JUL 08 '11   NL*

(See Continuation Sheet)
☐ Legal
☐ Contractual _____%

The Plaintiff claims:

☒ $1,583.56 plus interest of <u>See Worksheet</u> and attorney's fees of $237.53 plus court costs.

☐ Return of the property and damages of $_____ for its detention in an action of replevin.

☐ Return of the property, or its value, plus damages of $_____ for its detention in action of detinue.

☐ Other:
and demands judgment for relief

Signature of Plaintiff/Attorney/Attorney Code

### ATTORNEYS

For Plaintiff - Name, Address, Telephone Number & Code
Nathan Willner~ - 8022;
Laurie H. Lyons; Michele R. Gagnon
Lyons, Doughty & Veldhuis, P.C.
P. O. Box 1269
Mt. Laurel, NJ 08054

Telephone Number:  888 299-0499
Maryland Office Address:
10461 Mill Run Circle, Suite 110
Owings Mills MD 21117

### MILITARY SERVICE AFFIDAVIT

☐Defendant _____ is in the military service. ☒No defendant is in the military service and the facts supporting this statment are: see attached.☐ I am unable to determine wheter or not any defendant is in military service.

July 05, 2011
Date                                   Signature of Affiant

### APPLICATION AND AFFIDAVIT IN SUPPORT OF JUDGMENT

Attached hereto are the indicated documents which contain sufficient detail as to liability and damage to apprise the Defendant clearly of the claim against the Defendant, including the amount of any interest claimed.

☐Properly authenticated copy of any note, security agreement upon which claim is based ☒Itemized statement of account ☒Interest worksheet☐ Vouchers ☐Check ☐Other written document ☒ Cardholder Agreement ☐Verified itemized repair bill or estimate  I HEREBY CERTIFY: That I am the☐ Plaintiff ☒ _____ of the Plaintiff herein and am competent to testify to the matters stated herein, which are made on my personal knowledge; that there is justly due and owing by the Defendant to the Plaintiff the sum set forth in the Complaint.

☒That      **See Attached Affidavit.  This is an attempt to collect a debt.  Any information will be used for that purpose.**

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the above Complaint are true and I am competent to testify these matters.

July 05, 2011
Date                                   Signature of Affiant

MD_01                                    MD File No.: 11-21934

6

9316 - 2011

State of MARYLAND

MIDLAND FUNDING LLC,

Plaintiff

-vs-                                              AFFIDAVIT OF ASHLEY LASHINSKI

SUZANNE HILL,

Defendant(s).

---

Ashley Lashinski, whose business address is 16 Mcleland Rd Suite101, St. Cloud, MN
56303, certifies and says:

1.      I am employed as a Legal Specialist and have access to pertinent account records
for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of
plaintiff.  I am a competent person over eighteen years of age, and make the statements herein
based upon personal knowledge of those account records maintained on plaintiff's behalf.
Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was
assigned all the rights, title and interest to defendant's CHASE BANK USA, N.A. account
XXXXXXXXXXXX1413 (MCM Number 8539196440) (hereinafter "the account"). I have
access to and have reviewed the records pertaining to the account and am authorized to make
this affidavit on plaintiff's behalf.

2.      I am familiar with the manner and method by which MCM creates and maintains its
business records pertaining to this account. The records are kept in the regular course of
business. It was in the regular course of business for a person with knowledge of the act or
event recorded to make the record or data compilation, or for a person with knowledge to
transmit information thereof to be included in such record. In the regular course of business,
the record or compilation is made at or near the time of the act or event. The relevant
financial information concerning the account includes the following:

---

AFFIDAVIT OF ASHLEY LASHINSKI - 1


8539196440


AFFRECORD

11-21934

7

3.   The account shows that the defendant(s) owed a balance of $1583.56; and I am advised that interest is due from 2010-02-28 accrued at a rate of 6.0000% as an annual percentage rate, amounting to $117.40, making a total due and owing of $1700.96.

4.   It is in the regular course of business of plaintiff's agents and/or its attorneys for demand to be made for payment of the balance herein prior to making this affidavit; defendant(s) failed to make full payment of the amount owed on the account; and the attorneys representing plaintiff were retained for the purpose of collecting the delinquent debt owed on the account set out above.

I solemnly affirm under penalty of perjury and upon personal knowledge that the contents of the foregoing affidavit are true.

_____JUN 2 1 2011___
Date

Ashley Lashinski

STATE OF MINNESOTA

COUNTY OF STEARNS

Signed and sworn to (or affirmed) before me on _____JUN 2 1 2011_____ by Ashley Lashinski.

(Seal)                              Notary Public

My commission expires:_____

Doreen Mary Backhaus
Notary Public-Minnesota
My Commission Expires Jan. 31, 2016

NJ130
Lyons, Doughty & Veldhuis P.C.

AFFIDAVIT OF ASHLEY LASHINSKI - 2



AFFRECORD



8539196440                                                    11-21934

8

Chase (7 pgs)

CMA18103

# Cardmember Agreement

## ACCEPTANCE OF THIS AGREEMENT

This agreement governs your credit card account with us referenced on the card carrier containing the card for this account. Any use of your account is covered by this agreement. Please read the entire agreement and keep it for your records. You authorize us to pay for and charge your account for all transactions made on your account. You promise to pay us for all transactions made on your account, as well as any fees or finance charges. If this is a joint account, each of you, together and individually, is responsible for paying all amounts owed, even if the account is used by only one of you. We may require that you pay the full amount owed without first asking the other person(s) to pay.

Please sign the back of your card when you receive it. You will be bound by this agreement if you or anyone authorized by you use your account for any purpose, even if you don't sign your card. Whether you use your account or not, you will be bound by this agreement unless you cancel your account within 30 days after receiving your card and you have not used your account for any purpose.

Throughout this agreement, the words "we", "us" and "our" mean Chase Bank USA, N.A., the issuer of your credit card and account. The words "you", "your" and "yours" mean all persons responsible for complying with this agreement, including the person who applied for the account and the person to whom we address billing statements, as well as any person who agrees to be liable on the account. The word "card" means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this agreement.

## USING YOUR ACCOUNT

Your account is a consumer account and shall be used only for personal, family or household purposes. Unless we agree or it is required by law, we will not be responsible for merchandise or services purchased or leased through use of your account. You promise to use your account only for valid and lawful transactions. For example, internet gambling may be illegal in some places. It is not our responsibility to make sure that you use your account only for permissible transactions, and you will remain responsible for paying for a transaction even if it is not permissible or contemplated under this agreement.
Types of Transactions:

- **Purchases:** You may use your card to pay for goods or services.
- **Checks:** We may provide you cash advance checks or balance transfer checks as a way to use your account. We also refer to them in this agreement as a check or checks. You may use a check to pay for goods or services, to transfer balances to your account, or for other uses we allow. But you may not use these checks to transfer balances to this account from other accounts with us or any of our related companies. Only the person whose name is printed on the check may sign the check. Cash advance checks are treated as cash advances and balance transfer checks are treated as balance transfers except as noted in this agreement or any offer we make to you. We may treat checks that we call convenience checks as balance transfers. However, checks that we call convenience checks and that we indicated to you are subject to the terms for cash advances, may be treated as cash advances and assessed cash advance rates and fees.
- **Balance Transfers:** You may transfer balances from other accounts or loans with other credit card issuers or other lenders to this account, or other balance transfers we allow. But you may not transfer balances to this account from other accounts with us or any of our related companies. If a portion of a requested balance transfer will exceed your available credit line, we may process a partial balance transfer up to your available credit line.
- **Cash Advances:** You may use your card to get cash from automatic teller machines, or from financial institutions accepting the card; or to obtain travelers checks, foreign currency, money orders, wire transfers or similar cash-like charges; or to obtain lottery tickets, casino gaming chips, race track wagers or for similar betting transactions. You may also use a third party service to make a payment on your behalf and bill the payment to this account.
- **Overdraft Advances:** If you have an eligible checking account with one of our related banks, you may link this account to your checking account with our related bank to cover an overdraft on that checking account under the terms of this agreement and your checking account agreement.

Billing Cycle: In order to manage your account, we divide time into periods called "billing cycles". Each billing cycle is approximately one month in length. For each calendar month, your account will have a billing cycle that ends in that month. Your account will have a billing cycle ending in each calendar month whether or not there is a billing statement for that billing cycle.

Authorized Users: If you allow someone to use your account, that person will be an authorized user. You may request an additional card for use by an authorized user on your account. If you do so, this additional card may appear on the credit report of that authorized user. You should think carefully before allowing anyone to become an authorized user because you are allowing that person to use the account as you can. You will remain responsible for the use of your account and each card issued on your account according to the terms of this agreement. This includes your responsibility for paying all charges on your account made by an authorized user.

You must notify us to terminate an authorized user's permission to use your account. If you notify us, we may close the account and/or issue a new card or cards with a different account number. You should also recover and destroy any cards, checks or any other means of access to your account from that authorized user.

Credit Line: Your credit line appears on your billing statements. We may also refer to the credit line as a credit limit. Your billing statement may also show that only a portion of your credit line may be used for cash advances. Cash advances, including cash advance checks, are charged against the cash advance portion of your credit line, and all other transactions are charged against your credit line. You are responsible for keeping track

of your account balance, including any fees and finance charges, and making sure it remains below your credit line. If your account balance is over your credit line for any reason, we may charge you an overlimit fee as described in this agreement. We may, but are not required to, authorize charges that go over your credit line. You must pay any amount over your credit line, and you must pay us immediately if we ask you to. This agreement applies to any balance on your account, including any balance over your credit line.

At our discretion, you may increase, reduce, or cancel your credit line, or the cash advance portion of your credit line, at any time. However, if you have asked us not to do so, we will not increase your credit line. A change to your credit line will not affect your obligation to pay us.

International Transactions: International transactions include any transaction that you make in a foreign currency or that you make outside of the United States of America even if it is made in U.S. dollars. If you make a transaction in a foreign currency, Visa International or MasterCard International, Inc., will convert the transaction into U.S. dollars by using its respective currency conversion procedures. The exchange rate each entity uses to convert currency is a rate that it selects either from the range of rates available in the wholesale currency markets for the applicable processing date (which rate may vary from the rate the respective entity itself receives), or the government-mandated rate in effect on the applicable processing date. The rate in effect on the applicable processing date may differ from the rate on the date you used your card or account. We reserve the right to charge you an additional 3% of the U.S. dollar amount of any international transaction, whether that transaction was originally made in U.S. dollars or was made in another currency and converted to U.S. dollars by Visa or MasterCard. In either case, the 3% will be calculated on the U.S. dollar amount provided to us by that entity. The same process and charges may apply if any international transaction is reversed.

Refusal to Authorize Transactions: We may, but are not required to, decline a transaction on your account for any of the following reasons:
- because of operational considerations,
- because your account is in default,
- if we suspect fraudulent or unlawful activity or,
- in our discretion, for any other reason.

We are not responsible for any losses if a transaction on your account is declined for any reason, either by us or a third party, even if you have sufficient credit available.

For online transactions, we may require that you register your account with an authorization system that we select. We will notify you if we want you to register. If you do not register, we may decline your online transactions.

Refusal to Pay Checks: Each check you write is your request for funds. When we receive a check for payment, we may review your account to decide whether to authorize that check. We may, but are not required to, reject and return unpaid a check for any reason, including the following examples:
- We or one of our related companies is the payee on the check.
- Your credit line or cash advance portion of your credit line has been exceeded, or would be exceeded if we paid the check.
- The check is post-dated. If a post-dated check is paid, resulting in another check being returned or not paid, we are not responsible.
- You have used the check after the date specified on it.
- You are in default or would be if we paid the check.

Lost or Stolen Cards, Checks or Account Numbers: If any card, check, account number or other means to access your account is lost or stolen, or you think someone used or may use them without your permission, you must notify us at once by calling the Cardmember Service telephone number shown on your card or billing statement. Do not use your account after you notify us, even if your card, check, account number or other means to access your account is found or returned. We may terminate or suspend your credit privileges when you notify us of any loss, theft or unauthorized use related to your account.

You may be liable if there is unauthorized use of your account from which you receive no benefit, but you will not be liable for more than $50.00 of such transactions, and you will not be liable for any such transactions made after you notify us of the loss, theft or unauthorized use. However, you must identify for us the unauthorized charges from which you received no benefit.

We may require you to provide us information in writing to help us find out what happened. We may also require you to comply with certain procedures in connection with our investigation.

## PAYMENTS

Payment Instructions: Your billing statement and accompanying envelope include instructions you must follow for making payments and sets forth the date and time by which we must receive the payment.

You agree to pay us amounts you owe in U.S. dollars drawn on funds on deposit in a U.S. financial institution or the U.S. branch of a foreign financial institution using a payment check, money order or automatic debit that will be processed or honored by your financial institution. We will not accept cash payments. Your total available credit may not be restored for up to 15 days after we receive your payment.

Any payment check or other form of payment which you send to us for less than the full balance that is marked "paid in full" or with a similar notation or that you otherwise tender in full satisfaction of a disputed amount (conditional payments), must be sent to us at the conditional payments address listed on your monthly statement. We reserve all our rights regarding such payments. For example, if it is determined there is no valid dispute or if any such payment is received at any other address, we may accept the payment and you will still owe any remaining balance. We may refuse to accept any such payment by returning it to you, not cashing it or by destroying it. All other payments that you make should be sent to the regular payment address shown on your monthly statements.

9

We reserve the right to electronically collect your eligible payment checks, at first presentment and any representment, from the bank account on which the check is drawn. Our receipt of your payment checks is your authorization for us to collect the amount of the check electronically, or, if needed, by a draft drawn against the bank account. Payment checks will be collected electronically by sending the check amount along with the check, routing and account numbers to your bank. Your bank account may be debited as early as the same day we receive your payment. The original payment check will be destroyed and an image will be maintained in our records.

**Minimum Payment:** You agree to pay at least the minimum payment due, as shown on your billing statement, so that we receive it by the date and time payment is due. You may pay more than the minimum payment due and may pay the full amount you owe us at any time. If you have a balance that is subject to finance charges, the sooner you pay us, the less you will pay in finance charges because finance charges accrue on your balance each day.

Your billing statement shows your beginning balance and your ending balance (the "New Balance" on your billing statement). If the New Balance is $10.00 or less, your minimum payment due will be the New Balance. Otherwise, it will be the largest of the following: $10.00; 2% of the New Balance; or the sum of 1% of the New Balance, total billed periodic rate finance charges, and any billed late and overlimit fees. As part of the minimum payment due, we also add any amount past due and any amount over your credit line.

**Payment Allocation:** You agree that we are authorized to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.

**Credit Balances:** You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges or fees billed to your account.

**Automatic Charges:** You may authorize a third party to automatically charge your account for repeat transactions (for example, monthly utility charges, memberships and insurance premiums). If automatic charges are stopped for any reason (including because your account is closed or suspended for any reason) or your account number changes, you are responsible for notifying the biller and paying these charges directly. If your account number changes, we may, but are not required to, pay from your new account number charges that you authorized to be billed to your old account number.

**Promotions:** From time to time we may offer special terms for your account. If we do, we will notify you about the terms of the offer and how long they will be in effect. Any promotion is subject to the terms of this agreement, as modified by the promotional offer.

## FINANCE CHARGES

**Daily Periodic Rates and Annual Percentage Rates:** Your annual percentage rates ("APRs") and the corresponding daily periodic rates are listed on the Rates and Fees Table that is at the end of this document or provided separately. To get the daily periodic rate we divide the APR by 365, and in effect always round up at the fifth place to the right of the decimal point.

**Variable Rates:** One or more APRs that apply to your account may vary with changes to the Prime Rate. When you have an APR that varies with changes to the Prime Rate, we calculate the APR by adding a margin to the Prime Rate published in *The Wall Street Journal* two business days before the Closing Date shown on your billing statement. The "Prime Rate" is the highest (U.S.) Prime Rate published in the Money Rates section of *The Wall Street Journal*. If *The Wall Street Journal* stops publishing the Prime Rate, we will select a similar reference rate and inform you on your billing statement or through a separate notice.

A "margin" is the percentage we add to the Prime Rate to calculate the APR. A "business day" is any day that is not a weekend or federal holiday. The Rates and Fees Table shows which rates, if any, are variable rates. It also lists the margin for each variable rate and any minimum daily periodic rate and corresponding APR. Two business days before the Closing Date shown on your billing statement, we see what the Prime Rate is. We then add the applicable margin to that Prime Rate to get the APR. The daily periodic rate is calculated as described above.

If our calculation results in a change to a daily periodic rate from the previous billing cycle because the Prime Rate has changed, the new rate will apply as of the first day of your billing cycle that ends in the calendar month in which we made the calculation. If the daily periodic rate increases, you will have to pay a higher periodic finance charge and may have to pay a higher minimum payment.

**Default Rates:** Your APRs also may vary if you are in default under this agreement or any other agreement you have with us or any of our related companies for any of the following reasons:

*   We do not receive, for any payment that is owed on this account or any other account or loan with us, at least the minimum payment due by the date and time due.
*   You exceed your credit line on this account.
*   You make a payment to us that is not honored by your bank.

If any of these events occurs, we may increase the APRs (including any promotional APR) on all balances (excluding overdraft advances) up to a maximum of the default rate stated in the Rates and Fees Table. We may consider the following factors to determine your default rate: the length of time your account has been open, the existence, seriousness and timing of the defaults on your account; other indications of your account usage and performance; information about your other relationships with us or any of our related companies; and information we obtain from consumer credit reports obtained from credit bureaus. The default rate will take effect as of the first day of the billing cycle in which the default occurs.

If we decide not to increase your APR even though there is a default or if we do not increase your APR up to the maximum default rate stated in the Rates and Fees Table, we reserve our right to increase your APR in the event of any future default. We may at our discretion determine to charge reduced default rates or reinstate standard rates for all or selected balances on your account.

**Finance Charge Calculation — Average Daily Balance Method (Including New Transactions):** We calculate periodic finance charges separately for each balance associated with a different category of transactions (for example, purchases, balance transfers, balance transfer checks, cash advances, cash advance checks, overdraft advances, and each promotion). These calculations may combine different categories with the same daily periodic rates. This is how it works:

We calculate periodic finance charges for purchases, balance transfers, balance transfer checks, cash advances, cash advance checks, and overdraft advances by multiplying the daily balance for each of those categories by the daily periodic rate for each of those categories, each day. You may have overdraft advances only if you have linked this account to a checking account with one of our related banks. We calculate the periodic finance charges for purchases, balance transfers, balance transfer checks, cash advances, and cash advance checks subject to a promotional rate the same way, but we use the promotional rate.

To get the daily balance for each day for each category:

*   We take the beginning balance for that day.
*   We add to that balance any new transactions, fees, other charges, and debit adjustments that apply to that category. We add a new purchase, cash advance, balance transfer or overdraft advance, if applicable, to the daily balance as of the transaction date, or a later date of our choice. We add a new cash advance check or balance transfer check to the daily balance as of the date the cash advance check or balance transfer check is deposited by a payee, or a later date of our choice.
*   We subtract from that balance any payments, credits, or credit adjustments that apply to that category and that are credited as of that day.
*   We treat a credit balance as a balance of zero.

To get the beginning balance for each category for the next day, we add the daily periodic finance charge to the daily balance. If more than one daily periodic rate could apply to a category because the rate for the category may vary based on the amount of its average daily balance, we will use the daily periodic rate that applies for the average daily balance amount at the end of its billing cycle to calculate the daily periodic finance charge each day. This agreement provides for daily compounding of finance charges.

To get the total periodic finance charge for the billing cycle, we add all of the daily periodic finance charges for each category for each day during the billing cycle. However, if any periodic finance charge is due, we will charge you at least the minimum periodic finance charge stated in the Rates and Fees Table. It it is necessary to add an additional amount to reach the minimum finance charge, we add that amount to the balance for purchases made during the billing cycle.

The total finance charge on your account for a billing cycle will be the sum of the periodic finance charges plus any transaction fee finance charges.

For each category you calculate an average daily balance (including new transactions) for the billing cycle by adding all your daily balances and dividing that amount by the number of days in the billing cycle. If you multiply the average daily balance for a category by the applicable daily periodic rate, and multiply the result by the number of days in the billing cycle, the total will equal the periodic finance charges for that balance attributable to that billing cycle, except for minor variations due to rounding.

**Grace Period and Accrual of Finance Charges:** We accrue periodic finance charges on a transaction, fee, or finance charge from the date it is added to your daily balance until payment in full is received on your account. However, we do not charge periodic finance charges on new purchases billed during a billing cycle if we receive payment of your New Balance on your previous billing statement by the date and time your minimum payment is due and we receive payment of your New Balance on your previous billing statement by the date and time your payment was due. This exception or "grace period" applies only to purchases and does not apply to balance transfers, balance transfer checks, cash advances, cash advance checks or overdraft advances, if applicable.

**Transaction Fees for Cash Advances:** We may charge you a cash advance fee in the amount stated in the Rates and Fees Table for cash advance checks and cash advances.

In addition, if you use a third party service to make a payment on your behalf and the service charges the payment to this account, we may charge a transaction fee for the payment.

These transaction fees are finance charges. We add the fee to the balance for the related category as of the transaction date of the cash advance. For example, a transaction fee for a cash advance would be added to your cash advance balance.

**Transaction Fees for Balance Transfers:** We may charge you a balance transfer fee in the amount stated in the Rates and Fees Table for balance transfer checks and balance transfers.

These transaction fees are finance charges. We add the fee to the balance for the related category as of the transaction date of the balance transfer. For example, a transaction fee for a balance transfer would be added to your balance transfer balance.

## OTHER FEES AND CHARGES

We may charge the following fees. The amounts of these fees are listed in the Rates and Fees Table. These fees will be added to the balance for purchases made during the billing cycle.

**Annual Membership Fee:** If your account has an annual membership fee, it will be billed each year or in monthly installments (as stated in the Rates and Fees Table), whether or not you use your account, and you agree to pay it when billed. The annual

10

membership fee is non-refundable unless you notify us that you wish to close your account within 30 days of the date we mail your billing statement on which the annual membership fee is charged and at the same time, you pay your outstanding balance in full. Your payment of the annual membership fee does not affect our right to close your account or limit your right to make transactions on your account. If your account is closed by you or us, we will continue to charge the annual membership fee until you pay your outstanding balance in full and terminate your account relationship.

**Late Fee:** If we do not receive at least the required minimum payment by the date and time it is due as shown on your billing statement for any billing cycle, we may charge the late fee shown in the Rates and Fees Table. If the late fee is based on a balance, we calculate the late fee using the Previous Balance on the current month's statement that shows the late fee. This balance is the same as the New Balance shown on the prior month's statement for which we did not receive at least the required minimum payment by the date and time it was due.

**Overlimit Fee:** If your account balance is over your credit line at any time during a billing cycle, even if only for a day, we may charge an overlimit fee. We may charge this fee even if your balance is over the credit line because of a finance charge or fee we imposed or a transaction we authorized. We will not charge more than one overlimit fee for any billing cycle. But we may charge an overlimit fee in subsequent billing cycles, even if no new transactions are made on your account, if your account balance still is over your credit line at any time during the subsequent billing cycles.

**Return Payment Fee:** If (a) your payment check or similar instrument is not honored, (b) an automatic debit or other electronic payment is returned unpaid, or (c) we must return a payment check because it is not signed or cannot be processed, we may charge a return payment fee.

**Return Check Fee:** If (a) we stop payment on a cash advance check or balance transfer check at your request, or (b) we refuse to pay a cash advance check or balance transfer check, we may charge a return check fee.

**Administrative Fees:** If you request a copy of a billing statement, sales draft or other record of your account or if you request two or more cards or any special services (for example, obtaining cards on an expedited basis), we may charge you for these services. However, we will not charge you for copies of billing statements, sales drafts or similar documents that you request for a billing dispute you may assert against us under applicable law. We may charge, for any services listed above and other services we provide, the fees from time to time in effect when we offer the service.

**DEFAULT/COLLECTION**

We may consider you to be in default if any of these occurs:
- We do not receive at least the minimum amount due by the date and time due as shown on your billing statement.
- You exceed your credit line.
- You fail to comply with the terms of this agreement or any agreement with one of our related companies.
- We obtain information that causes us to believe that you may be unwilling or unable to pay your debts to us or to others on time.
- You file for bankruptcy.
- You become incapacitated or in the event of your death.

If we consider your account to be in default, we may close your account without notice and require you to pay your unpaid balance immediately. We also may require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your account to be six or more billing cycles past due.

To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorneys' fees, court costs, and all other expenses of enforcing our rights under this agreement.

**CLOSING YOUR ACCOUNT**

You may close your account at any time. If you call us to close your account, we may require that you confirm your request in writing.

We may close your account at any time or suspend your credit privileges at any time for any reason without prior notice except as required by applicable law. If we close your account, we will not be liable to you for any consequences resulting from closing your account or suspending your credit privileges.

If you or we close your account, you and any authorized users must immediately stop using your account and destroy all cards, checks or other means to access your account or return them to us upon request. You will continue to be responsible for charges to your account, even if they are made or processed after your account is closed and you will be required to pay the outstanding balance on your account according to the terms of this agreement. In addition, to the extent allowed by law, we may require you to pay the outstanding balance immediately or at any time after your account is closed.

**ARBITRATION AGREEMENT**

PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE IN OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

**Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

**Parties Covered.** For the purposes of this Arbitration Agreement, "we", "us", and "our" also includes our parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we", "us" and "our" shall include any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

**Claims Covered.** Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or also in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

As an exception to this Arbitration Agreement, you retain the right to pursue in a small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to an individual arbitration claim if either you or we so elect.

No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us.

**Initiation of Arbitration.** The party filing a Claim in arbitration must choose one of the following two arbitration administrators: American Arbitration Association; or National Arbitration Forum. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the rules of the selected arbitration administrator and as may be provided in this Arbitration Agreement. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the two arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators as follows:

American Arbitration Association, 335 Madison Avenue, Floor 10, New York, NY 10017-4605, Web site: www.adr.org, 800-778-7879; or

National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, Web site: www.arbitration-forum.com, 800-474-2371.

**Procedures and law applicable in arbitration.** A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. If the law authorizes such relief, the arbitrator may award punitive damages or attorney fees. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**Costs.** We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we

will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. The payment of any such hearing fees by us will be made directly to the arbitration administrator selected by you or us pursuant to this Arbitration Agreement. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

**Enforcement, finality, appeals.** Failure or any delay in enforcing this Arbitration Agreement at any time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the arbitration organization. The panel will reconsider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

**Severability, survival.** This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party or any similar proceeding initiated by you or on your behalf; and (iii) payment of the debt in full by you or by a third party. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

**CHANGES TO THIS AGREEMENT**

We can change this agreement at any time, regardless of whether you have access to your account, by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent, and enforcement of the rights and obligations you or we may have relating to this agreement. Modifications, additions, or deletions are called "Changes" or a "Change".

We will notify you of any Change if required by applicable law. These Changes may be effective with notice only, at the time stated in our notice, in accordance with applicable law. Unless we state otherwise, any Change will apply to the unpaid balances on your account and to new transactions.

The notice will describe any rights you may have with respect to any Change, and the consequences if you do or do not exercise those rights. For example, the notice may state that you may notify us in writing by a specified date if you do not want to accept certain Changes we are making. If you notify us in writing that you do not accept the Changes, your account may be closed (if it is not already closed) and you will be obligated to pay your outstanding balance under the applicable terms of the agreement. If you do not notify us in writing by the date stated in the notice, or if you notify us but then use your account after the date stated in the notice, you will be deemed to accept all Changes in the notice and to accept and confirm all terms of your agreement and all Changes in prior notices we have sent you regardless of whether you have access to your account.

**CREDIT INFORMATION**

We may periodically review your credit history by obtaining information from credit bureaus and others.

We may report information about you and your account to credit bureaus, including your failure to pay us on time. If you request additional cards on your account for others, we may report account information in your name as well as in the names of those other people.

If you think we have reported inaccurate information to a credit bureau, you may write to us at the Cardmember Service address listed on your billing statement. Please include your name, address, account number, telephone number and a brief description of the problem. If available, please provide a copy of the credit bureau report in question. We will promptly investigate the matter and, if our investigation shows that you are right, we will contact each credit bureau to which we reported the information and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone. We will also notify the credit bureau that you dispute the information unless you let us know that you no longer dispute the information.

**NOTICES/CHANGE OF PERSONAL INFORMATION**

We will send cards, billing statements and other notices to you at the address shown in our files. Or, if this is a joint account, we can send billing statements and notices to any joint account holder. Notice to one of you will be considered notice to all of you and all of you will remain obligated on the account. If you change your name, address, or home, cellular or business telephone number or email address (if you elect to receive billing statements or other notices online), you must notify us immediately in writing at the address shown on your billing statement. We may, at our option, accept mailing address corrections from the United States Postal Service. We may contact you about your account, including for customer service or collection, at any address or telephone number as well as any cellular telephone number you provide us.

**TELEPHONE MONITORING AND RECORDING**

We, and if applicable, our agents, may listen to and record your telephone calls with us. You agree that we, and if applicable, our agents, may do so, whether you or we initiate the telephone call.

**INFORMATION SHARING**

You authorize us to share certain information about you and your account within our family of companies, and with others outside our family of companies including any company or organization whose name or mark may appear on the cards, as permitted by law. Our Privacy Policy, which is provided to you when you first receive an agreement and at least once each calendar year thereafter, describes our information sharing practices and the choices you have and directions you may give us about our sharing of information about you and your account with companies or organizations within and outside of our family of companies.

**ILLINOIS CARDMEMBERS**

Illinois law provides that we may not share information about you with companies or other organizations outside of our family of companies unless you authorize the disclosure or unless the disclosure falls under another exception in the law (such as sharing information to process your transactions or in response to a subpoena). You hereby agree that, if you choose not to exercise the applicable opt-out described in our Privacy Policy, you will be deemed to have authorized us to share personal information we have about you (including information related to any of the products or services you may have with any of our companies) with companies or other organizations outside of our family of companies.

**ENFORCING THIS AGREEMENT**

We can delay enforcing or not enforce any of our rights under this agreement without losing our right to enforce them in the future. If any of the terms of this agreement are found to be unenforceable, all other terms will remain in full force.

**ASSIGNMENT**

We may assign your account, any amounts you owe us, or any of our rights and obligations under this agreement to a third party. The person to whom we make the assignment will be entitled to any of our rights that we assign to that person.

**GOVERNING LAW**

THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT.

**FOR INFORMATION**

Please call the Cardmember Service telephone number on your card or billing statement if you have any questions about your account or this agreement.

**YOUR BILLING RIGHTS**

**Keep This Notice For Future Use**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors Or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the Cardmember Service address shown on your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us at least three business days before the automatic payment is scheduled to occur.

**Your Rights And Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

**Special Rules for Credit Card Purchases**

12

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. This right does not apply to check transactions. There are two limitations on this right:
(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.00.
These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Copyright ©2007 JPMorgan Chase & Co. All rights reserved.

CMA18103

13

**RATES AND FEES TABLE**
(This table may also be referred to as the Table of Interest Charges)

**Rates (APR means Annual Percentage Rate)**

| | |
|---|---|
| **Introductory APR** 0% fixed APR (0% daily periodic rate) on balance transfers and balance transfer checks for the first 3 billing cycles following the opening of your account (the "Introductory Period") | |
| **Purchase APR** The Prime Rate* plus 14.99%, currently 23.24% (0.06368% daily periodic rate) | |
| **Balance Transfer/Balance Transfer Check APR after the Introductory Period** The Prime Rate* plus 14.99%, currently 23.24% (0.06368% daily periodic rate) | |
| **Cash Advance/Cash Advance Check APR** The Prime Rate* plus 19.99%, currently 28.24% (0.07737% daily periodic rate) | |
| **Default APR** The Prime Rate* plus up to 23.99%, currently 32.24% (0.08833% daily periodic rate) | |
| **Overdraft Advance APR** 13.99% fixed APR (0.03833% daily periodic rate) | |

\* Estimated variable APRs above are based on the 8.25% Prime Rate as of March 22, 2007.

**Fees and Finance Charges**

| | |
|---|---|
| **ATM Cash Advance Fee -- Finance Charge** 3% of transaction (minimum fee of $10.00) | |
| **Non-ATM Cash Advance / Cash Advance Check Fee -- Finance Charge** 3% of transaction (minimum fee of $10.00) | |
| **Balance Transfer Fee -- Finance Charge** 3% of transaction (minimum fee of $5.00 and maximum of $75.00) | |
| **Balance Transfer Check Fee -- Finance Charge** 3% of transaction (minimum fee of $5.00 and maximum of $75.00) | |
| **Minimum Periodic Finance Charge** (if any periodic finance charge is payable for a billing cycle) | $1.00 |
| **Annual Membership Fee** | None |
| **Late Fees:** $15.00 if the balance is up to, but not including $100.00; $29.00 if the balance is $100.00 up to, but not including $250.00; $39.00 if the balance is $250.00 and over | |
| **Overlimit Fee** | $39.00 |
| **Return Payment Fee** | $39.00 |
| **Return Check Fee** | $39.00 |
| **Administrative Fees:** Copy of Billing Statement or other record | $5.00 |

14

# CHASE ◆

## BILL OF SALE

Chase Bank USA, N.A. ("Seller"), for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement dated _____ between Seller and Midland Funding, LLC ("Purchaser"), its successors and assigns ("Credit Card Account Purchase Agreement") hereby assigns effective as of the File Creation Date of December 10, 2009 all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in Exhibit 1 attached hereto and made part hereof for all purposes.

> Number of Accounts
> Total Unpaid Balances
> Premium
> Due Seller

Amounts due to Seller by Purchaser in hereunder shall be paid U.S. Dollars by a wire transfer to be received by Seller on January 4, 2010 (the "Closing Date") by 2:00 p.m. Seller's time, as follows:

> Chase Bank USA, N.A
> ABA
> Beneficiary Name:  Chase Bank USA, N.A.
> Beneficiary Account:

This Bill of Sale is executed without recourse except as stated in the Credit Card Account Purchase Agreement to which this is an Exhibit. No other representation of or warranty of title or enforceability is expressed or implied.

| Chase Bank USA, N.A. | Midland Funding, LLC |
|---|---|
| By: | By: |
| Date: December 29, 2009 | Date: |
| | J. Brandon Black |
| | President |
| Title: Team Leader | Title: |

15

# CHASE ⬡

### BILL OF SALE

Chase Bank USA, N.A. ("Seller"), for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement dated                between Seller and Midland Funding, LLC ("Purchaser"), its successors and assigns ("Credit Card Account Purchase Agreement"), hereby assigns effective as of the File Creation Date of December 10, 2009 all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in Exhibit 1 attached hereto and made part hereof for all purposes.

    Number of Accounts
    Total Unpaid Balances
    Premium
    Due Seller

Amounts due to Seller by Purchaser in hereunder shall be paid U.S. Dollars by a wire transfer to be received by Seller on January 4, 2010 (the "Closing Date") by 2:00 p.m. Seller's time, as follows:

    Chase Bank USA, N.A.
    ABA
    Beneficiary Name:  Chase Bank USA, N.A.
    Beneficiary Account:

This Bill of Sale is executed without recourse except as stated in the Credit Card Account Purchase Agreement to which this is an Exhibit. No other representation of or warranty of title or enforceability is expressed or implied.

Chase Bank USA, N.A.                    Midland Funding, LLC

By: _____          By: _____

Date: __December 29, 2009___           Date: _____
                                              J. Brandon Black
                                              President

Title: _Teamleader_____          Title: _____

16

Return Mail Only - No Correspondence

**mcm**  Dept. 12421
PO Box 603
Oaks, PA 19456

| MCM Account Number | |
|---|---|
| | 8539196440 |
| **Original Creditor** | |
| | CHASE BANK USA, N.A. |
| **CURRENT BALANCE** | |
| | $1,583.82 |
| **PAYMENT DUE DATE** | |
| | 05-04-2011 |

03-20-2011

18824 - 615

#BWNHLTH
#0000 0653 9196 4401#
SUZANNE M HILL
310 BERTS DR
LOTHIAN, MD 20711-9420

---

## NOTICE OF NEW OWNERSHIP *AND* PRE-LEGAL REVIEW

Dear SUZANNE M HILL,

Midland Funding LLC recently purchased your CHASE BANK USA, N.A. account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the servicer of this obligation.

Midland Credit Management, Inc. is considering forwarding this account to an attorney in your state for possible litigation. However, such forwarding will not occur until after the expiration of the time period described on the back of the letter. Upon receipt of this notice, please call to discuss your options.

If we don't hear from you or receive payment by 05-04-2011, we may proceed with forwarding this account to an attorney.

**What do you need to do to stop this process from continuing?**

   1) Mail in $300.00 and call to set up your remaining payments.
   2) Call us today to see how to qualify for discounts and payment plans.

LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. We encourage you to call us today: (800) 265-8825.

Sincerely,

Recovery Department
Midland Credit Management, Inc.
(800) 265-8825

### BENEFITS OF PAYING!

➢ This may be your last chance to work with us before the account goes to an attorney.

➢ No additional interest will be charged to your account.

➢ Get rid of this debt and get on with your life.

*Once your account is paid,*

➢ All collection calls and letters on this account will stop!

➢ We will notify the credit bureaus the debt is PAID IN FULL."

**CALL US TODAY!**
(800) 265-8825

Hours of Operation:
M-Th 6am - 7:30pm MST
Fri 6am - 5pm;
Sat 6am - 11am;

---

NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION
*Please tear off and return lower portion with payment in the envelope provided*

---

### PAYMENT COUPON

MCM Account No.:     8539196440
Original Account No.:         ████████1413
Current Balance:     $1,583.82

**Payment Due Date: 05-04-2011**

Amount Enclosed: _____

Make check payable to:
Midland Credit Management, Inc.

**mcm** Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060-0578

12 8539196440 1 0158382 050411 5

17

## AFFIDAVIT OF SERVICE

State of Maryland                   County of Anne Arundel                              **District Court**

RECEIVED

Case Number: 070200093162011   Court Date: 9/6/2011 1:15 pm

2011 JUL 27 P 3: 06

Plaintiff:
**MIDLAND FUNDING LLC.**

vs.

DISTRICT COURT OF MD
GLEN BURNIE

Defendant:
**SUZANNE HILL**



PRS2011019103
ENTERED

JUL 28 '11

VH

For:
Midland Funding
LYONS DOUGHTY AND VELDHUIS
P.O. Box 1269
Mount Laurel, NJ 08054

Received by PRIORITY PROCESS to be served on SUZANNE HILL, 310 BERTS DR., LOTHIAN, MD 20711.

I, PAUL JOHNSON, being duly sworn, depose and say that on the **23rd day of July, 2011 at 6:50 pm**, I:

**INDIVIDUALLY/PERSONALLY** served defendant by delivering a true copy of the **A SUMMONS AND COMPLAINT** with the date and hour of service endorsed thereon by me, to: SUZANNE HILL at the address of: **310 BERTS DR., LOTHIAN, MD 20711**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 48, Sex: F, Race/Skin Color: White, Height: 5'6, Weight: 215, Hair: Blonde, Glasses: Y

Under penalty of perjury, I certify that the above made statements are true. I am over the age of 18, under no legal disabilities and have no interest in the above action.

BRIANNAH LOMAX
NOTARY PUBLIC
MONTGOMERY CO. MD

BRIANNAH LOMAX
Notary Public, State of Maryland
County of Montgomery
My Commission Expires January 25, 2015

**PAUL JOHNSON**
Process Server

Subscribed and sworn to before me on the 25th day of July, 2011 by the affiant who is personally known to me.

Notary Public

PRIORITY PROCESS
P.O. Box 4189
Rockville, MD 20849-4189
(800) 420-8080

Our Job Serial Number: PRS-2011019103
Ref: 11-21934
Service Fee: $40.00

Copyright © 1992-2010 Database Services, Inc. - Process Server's Toolbox V6.4i

18